UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN DEVERICK LEWIS,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MATHEW CATES, et al.,<br><br>　　　　　　　　　Defendant. | Case No.: 15cv791-DMS-MDD<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS E. OJEDA AND D. PARAMO'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 27]** |

This Report and Recommendation is submitted to United States Districted Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

For the reasons set forth herein, the Court **RECOMMENDS** Defendants Ojeda and Paramo's Motion for Summary Judgment be **GRANTED**.

///

///

///

## I. PROCEDURAL HISTORY

Brian Deverick Lewis ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma* pauperis, with a civil complaint filed pursuant to 42 U.S.C. § 1983. (ECF Nos. 1, 4). Plaintiff also asserts jurisdiction under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq. ("RLUIPA"), and 28 U.S.C. §§ 2201 and 2202. (ECF No. 1 at 1). In his Complaint, Plaintiff set forth three claims alleging that his constitutional rights were violated when prison personnel: (1) assigned him to Administrative Segregation ("Ad-Seg") for twenty days because the prison lacked proper accommodations for his disability and denied release despite his repeated requests; (2) denied him a Muslim religious meal despite his repeated requests; and (3) returned him to Ad-Seg for an additional thirty-two days because the prison again lacked proper accommodations for his disability. (ECF No. 1 at 3-11). Following a Motion to Dismiss, Plaintiff's first and third claims for violations of due process and Defendant Cates were dismissed. (ECF No. 16). Plaintiff's only remaining claims are Claim Two for violation of Plaintiff's freedom of religion against Defendants Khan and Ojeda; a state-law negligence claim against Khan and Ojeda; claims arising under RLUIPA against Khan and Ojeda; and claims arising under the ADA against Defendant Paramo.

On August 10, 2017, Defendants Ojeda and Paramo filed a motion for summary judgment. (ECF No. 27). Following a requested extension, Plaintiff was given until November 20, 2017, to file his opposition, but as of the date of this Report and Recommendation, he has not done so.

## II. FACTUAL BACKGROUND

The Complaint alleges that on June 19, 2012, California Department of

Corrections and Rehabilitation ("CDCR") staff designated Plaintiff as disabled. (ECF No. 1 at 3). Plaintiff does not specify the exact nature of his disability but claims he has a mental illness requiring medication. (*Id.* at 5). Plaintiff was transferred from California Men's Colony State Prison to Richard J. Donovan Correctional Facility ("RJD") due to his disabled designation. (*Id.*). Plaintiff was placed in Ad-Seg upon arrival at RJD on September 14, 2012. (*Id.*). Plaintiff claims he was placed in Ad-Seg because RJD did not have the space available in the general prison population housing to accommodate Plaintiff's disability. (*Id.*). Plaintiff alleges his disability requires him to be in "Lower Bunk Lower Tier" housing. (*Id.*). Plaintiff does not allege that his Ad-Seg cell was not handicap accessible.

On September 15, 2012, Plaintiff filed a Form 3030 religious meal request and a Form 22 appeal requesting a religious meal, clothing, reading, and writing materials and release from Ad-Seg. (*Id.*). Plaintiff addressed these appeals to Defendants RJD Warden Daniel Paramo and CDCR Chaplain Alan Khan, neither of whom responded. (*Id.*).

On September 17, 2012, Captain Sanchez spoke with Plaintiff about his Ad-Seg placement. (*Id.*). Plaintiff requested immediate release from Ad-Seg. (*Id.* at 4). Sanchez told Plaintiff that due to RJD's inability to properly accommodate his disability in the general population he would remain in Ad-Seg. (*Id.*).

Plaintiff alleges San Diego, California experienced two heat waves between September 14 and September 30, 2012. (*Id.*). RJD Ad-Seg does not have an air-conditioning system and Plaintiff alleges that during the heat waves, the temperature in Plaintiff's cell would rise above ninety degrees for several hours each day. (Id.). Plaintiff asserts that RJD had a heat plan to mitigate heat problems but Ad-Seg staff failed to implement it. (*Id.*).

Plaintiff claims he began to experience migraine headaches, as reflected in his medical records. (*Id.*).

On September 26, 2012, Plaintiff became "intensely distraught" about his Ad-Seg confinement. (*Id.*). On September 27, 2012, Plaintiff submitted a Form 22 appeal to Paramo requesting release from Ad-Seg and a religious meal. (*Id.*). Plaintiff also submitted Form 602 grievances to the Ad-Seg lieutenant and sergeant requesting release from Ad-Seg. (*Id.*). Plaintiff contemplated suicide. (*Id.* at 5). Plaintiff notified Correctional Officer Russell during a security check that he was suicidal but was ignored. (*Id.*).

On October 2, 2012, Plaintiff filed a petition for writ of habeas corpus in state court complaining of his Ad-Seg confinement. (*Id.*). In his petition, Plaintiff alleged that Defendants confined him to Ad-Seg, denied him a religious meal, and were deliberately indifferent to his mental health. (*Id.*). Plaintiff served Paramo with a copy of the petition on October 2, 2012, and also filed a Form 602 grievance requesting immediate release from Ad-Seg and a religious meal. (*Id.*).

After twenty days in Ad-Seg, Plaintiff was released into the general prison population on October 2, 2012, and he reported to CDCR medical staff. (*Id.*). Plaintiff claims medical staff determined his mental condition had deteriorated during his stay in Ad-Seg and doubled his psychotropic medications. (*Id.*).

Plaintiff further alleges that between September 15, 2012, and May 5, 2013, he submitted at least fifteen requests for religious meals. (*Id.* at 6). Plaintiff submitted a Form 602 grievance on December 24, 2012, which Defendant Khan interviewed him about on February 14, 2013. (*Id.*). Khan granted Plaintiff's Form 602 on February 14, 2013, and told Plaintiff he would begin receiving his religious meals. Plaintiff did not receive a meal

4

and began to petition Defendant Ojeda to provide religious meals. (*Id.*). Ojeda informed Plaintiff that Ojeda was unable to provide Plaintiff with a meal and that Plaintiff would need to request his religious meals from Defendant Khan. (*Id.*). Plaintiff alleges that he communicated with both Defendants Ojeda and Khan several times about not receiving his religious meals but a meal was never provided. (*Id.* at 6-7).

On May 5, 2013, Plaintiff wrote a 602 staff complaint against Defendants Khan and Ojeda and indicated that he would begin a hunger strike if he did not receive a religious meal. (*Id.* at 7). Khan again granted Plaintiff's 602 and said Plaintiff would receive religious meals, but Plaintiff alleges that during the entirety of his two stays in Ad-Seg, he never received a religious meal. (*Id.*).

Defendants have produced evidence of the following facts.[1] Defendant Ojeda worked, from September 2012 to June 2013, as the correctional sergeant supervising Ad-Seg buildings 6 and 7 at RJD. (ECF No. 27-2 at 1). As an Ad-Seg correctional officer, Ojeda was tasked with helping distribute religious meals to those inmates on the approved meal list. (*Id.* at 2).

Defendant Ojeda did not have the authority to place inmates on the religious meal list or determine if an inmate qualified to be on the list, as all aspects of list management were the responsibility of the chaplains for the individual religions. (*Id.*). Further, Defendant Ojeda did not have the supervisory authority to order that a chaplain add an inmate's name to the religious meals list, or provide a religious meal to an inmate who was not on the list. (*Id.*) If an inmate requested, but was not approved for, a religious

---

[1] These facts are undisputed because Plaintiff has not filed an opposition or put forth any evidence disputing them.

5

meal, Defendant Ojeda instructed the inmate to contact the appropriate chaplain through a Form 22. (*Id.*).

Defendant Paramo, RJD's warden, indicated that Plaintiff was housed in Ad-Seg from September 14, 2012, to October 2, 2012, while awaiting appropriate housing. (ECF No. 27-3 at 2). On October 22, 2012, Plaintiff was caught with drugs and issued a rules violation report for possession of a controlled substance for distribution. (*Id.*) As a result, Plaintiff was placed in Ad-Seg during the pendency of his charge, which was ultimately forwarded on to the San Diego District Attorney's Office for possible prosecution. (*Id.*).

While he is not typically involved in day-to-day housing decisions, Paramo served as the chairperson for Plaintiff's Institutional Classification Committee ("ICC"), which reviews the classification of those inmates housed in Ad-Seg. (*Id.*). The ICC, along with the inmate, reviews the inmate's file and case factors and ultimately determines the most appropriate housing and programming for each inmate. (*Id.*). Plaintiff's May 9, 2013, ICC noted that even though his state prosecution was pending, release from Ad-Seg would be appropriate based on length of stay. (*Id.* at 3).

Due to his mental health issues, Plaintiff participated in the Enhanced Outreach Patient ("EOP") program, which included grouped housing in a unit separate from the general prison population. (*Id.*). As an EOP participant, Plaintiff was unable to be housed outside of the program and the decision to include or remove Plaintiff from the EOP rested not with Defendant Paramo but with medical and psychiatric personnel. (*Id.*). Additionally, Plaintiff's file included a medical accommodation chrono that called for a lower bunk in a cell on a lower tier. These required accommodations limited the housing available to Plaintiff. (*Id.*).

On May 22, 2013, Paramo was the chairperson for another ICC

6

regarding Plaintiff's continued housing in Ad-Seg. (*Id.*). This second ICC met after the committee was informed that there was no appropriate housing available for Plaintiff outside Ad-Seg. The ICC decided to release Plaintiff from Ad-Seg as soon as appropriate housing became available and also "endorsed Plaintiff for transfer to another prison that would be able to accommodate his housing needs." (*Id.*).

### III. LEGAL STANDARD

**A. Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for the granting of a directed verdict. Judgment must be entered, "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "If reasonable minds could differ," however, judgment should not be entered in favor of the moving party. *Id.* at 250-51.

The parties bear the same substantive burden of proof as would apply at a trial on the merits, including plaintiff's burden to establish any element essential to his case. *Liberty Lobby*, 477 U.S. at 252; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);

7

*Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982). More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is no genuine issue for trial. *See Celotex*, 477 U.S. at 324. To successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 323; *Liberty Lobby*, 477 U.S. at 249).

While the district court is "not required to comb the record to find some reason to deny a motion for summary judgment," *Forsberg v. Pacific N.W. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988), *see also Nilsson v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988), the court may nevertheless exercise its discretion "in appropriate circumstances," to consider materials in the record which are on file but not "specifically referred to." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.*

In ruling on a motion for summary judgment, the court need not accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "No valid interest is served by withholding summary judgment on a complaint that wraps nonactionable conduct in a jacket woven of legal conclusions and hyperbole." *Vigliotto v. Terry*, 873 F.2d 1201, 1203 (9th Cir. 1989).

Moreover, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Nevertheless, "the district court may not disregard a piece of evidence at the summary stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-498 (9th Cir. 2015) (finding plaintiff's "uncorroborated and self-serving" declaration sufficient to establish a genuine issue of material fact because the "testimony was based on personal knowledge, legally relevant, and internally consistent.").

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n. 4 (9th Cir. 1994). A court may, nonetheless, "grant an unopposed motion for summary judgment if the movant's papers are themselves sufficient to support the motion and do not on their face reveal a genuine issue of material fact[.]" *Williams v. Santa Cruz Cnty. Sheriff's Dep't*, 234 F. App'x 522, 523 (9th Cir. 2007) (citing *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993)).

## **IV. DISCUSSION**

In their motion, Defendants argue that Defendants Ojeda and Paramo are entitled to summary judgment because (1) Ojeda did not have personal involvement in any alleged violation, and (2) Paramo is entitled to summary

9

judgment as a matter of law because suits against individual prison employees in their personal capacities are precluded under the ADA.

I. Sergeant Ojeda

Defendants argue that as Ojeda did not personally participate in the alleged religious freedom violation, he is therefore entitled to summary judgment. (ECF No. 27-1 at 4.)

Section 1983 liability "arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Causation must be established by showing acts and omissions of each defendant. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). This requires "a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Id.* There is no vicarious liability in Section 1983 lawsuits. *Ashcroft v. Iqbal*, 556 U.S. 665, 676 (citing, inter alia, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978)). Hence, a government official—whether subordinate or supervisor—may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012) ("[E]ach government official, his or her title notwithstanding, is only liable for his or her own misconduct.") (quoting *id.*; internal quotation marks omitted), cert. denied, 134 S. Ct. 70 (2013).

Here, the signed declaration filed with defendants' motion indicates that Defendant Ojeda had no authority or responsibility for any aspect of the religious meals program, except physically delivering the food. When Plaintiff reported to Ojeda that he was not receiving religious meals, Ojeda informed Plaintiff that he was not on the religious meal list and gave Plaintiff the information necessary to obtain religious meal eligibility from

Defendant Khan.

Plaintiff has not supported his contention that it was Ojeda's responsibility to provide him with a meal, or that Ojeda supervised Defendant Khan. In fact, Ojeda's declaration indicates that he did not have the authority to order Khan to take any action regarding Plaintiff's religious meal eligibility. Further, Plaintiff has not established that Ojeda's actions caused a constitutional deprivation.

Plaintiff's claims against Defendant Khan are not at issue in the instant motion and they will be addressed either in their own summary judgment motion, at trial, or through a settlement. That some of Plaintiff's claims survive, however, does not implicate Defendant Ojeda in the alleged violation. Although Plaintiff alleges in the Complaint that Ojeda was directly involved in denying Plaintiff religious meals, Plaintiff has presented no evidence of that or any purposeful act or failure on the part of Ojeda.

Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against Defendant Ojeda.

II. Warden Paramo

Plaintiff alleges that Defendant Paramo was personally responsible for Plaintiff's custody and well-being and that he and previously dismissed Defendant Cates "created a dangerous classification process that resulted in Plaintiff be[ing] placed into Ad-Seg based solely on his disability" in violation of the ADA. (ECF No. 1 at 10-11). The Complaint names Paramo in his individual capacity only. (*Id.* at 2). Defendants argue Paramo is entitled to summary judgment as a matter of law. (ECF No. 27-1 at 5).

Plaintiff is precluded from holding Paramo liable in his individual capacity for violations of Plaintiff's rights under the ADA. "[A] plaintiff

11

cannot bring an action under 42 U.S.C. § 1983 against a State official in [his] individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir.2002).

Accordingly, the Court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claim against Defendant Paramo.

## V. CONCLUSION

For the reasons outlined above, **IT IS RECOMMENDED** that the District Court issue an Order: (1) Approving and Adopting this Report and Recommendation; and (2) **GRANTING** Defendants' motion for summary judgment.

If the Court's recommendations are adopted, the following claims will remain PENDING:

- Claim Two for violation of Plaintiff's freedom of religion against Defendant Khan arising out of the denial of his religious meal;
- Plaintiff's negligence claim against Khan arising out of the denial of his religious meal; and
- Plaintiff's claims arising under RLUIPA against Defendant Khan.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties no later than **January 3, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objection shall be filed with the Court and served on all parties no later than **January 10, 2018.** The parties are advised that the failure to file objections within the specified time may waive the right to raise those objections on appeal of the

Court's order.  *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated: December 18, 2017

Hon. Mitchell D. Dembin
United States Magistrate Judge